s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| PETERS BROADCAST ENGINEERING, | : | Case No. 2:20-cv-3135 |
| | : | Judge Michael H. Watson |
| Plaintiff, | | Magistrate Judge Kimberly A. Jolsen |
| | : | |
| vs. | : | **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), (b)(3) AND (b)(6)** |
| 24 CAPITAL, LLC, *et al.*, | : | |
| Defendants. | : | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

Pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3) and (b)(6), Defendants, 24 Capital, LLC and Jason Sankov move to dismiss the Second Amended Complaint. The bases for this motion are more fully set forth in the following memorandum in support.

Respectfully submitted,

KAMINSKI LAW PLLC

*/s/Shanna M. Kaminski*
Shanna M. Kaminski (*pro hac vice*)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Telephone:  (248) 462-7111
E-mail: skaminski@kaminskilawpllc.com

EASTMAN & SMITH LTD.

*/s/Jared J. Lefevre*
Jared J. Lefevre (0085931)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio  43699-0032
Telephone:  (419) 241-6000
Telecopier:  (419) 247-1777
E-mail: jjlefevre@eastmansmith.com

*Attorneys for Defendants*
*24 Capital, LLC and Jason Sankov*

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| PETERS BROADCAST ENGINEERING, | : | Case No. 2:20-cv-3135 |
| | : | |
| Plaintiff, | : | Judge Michael H. Watson |
| | | Magistrate Judge Kimberly A. Jolsen |
| | : | |
| vs. | : | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), (b)(3) AND (b)(6)** |
| | : | |
| 24 CAPITAL, LLC, *et al.*, | : | |
| | : | |
| Defendants. | | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

## BACKGROUND

### *The Parties*

Plaintiff, Peters Broadcast Engineering, Inc. ("PBE") is an Indiana corporation that specializes in with its principal place of business in Fort Wayne, Indiana.  It is registered to do business in Ohio and has a resident agent in Toledo, Ohio.  PBE appears to not have any connection to the Southern District of Ohio.  Interestingly, PBE avoids alleging in the Second Amended Complaint ("Complaint") that it is an Indiana corporation, that its principal place of business is in Fort Wayne, Indiana and includes no allegations connecting it to the Southern District of Ohio.

Defendant, 24 Capital, LLC ("24 Capital") is a New York limited liability company. Its principal place of business is in Long Island City, New York and it has an office in North Miami Beach, Florida.  *See* Declaration of Mark Allayev ("Allayev Declaration") attached hereto.  24

3

Capital does not transact business in the State of Ohio and it does not market or advertise its funding products in the State of Ohio. Or any other state. *See* Allayev Declaration.

Defendant, Jason Sankov ("Sankov") is an individual that resides in Sunny Isles Beach, Florida. *See* Declaration of Yury ("Jason") Sankov ("Sankov Declaration") attached hereto. He began residing in Florida prior to 2019. *See* Sankov Declaration. Sankov has never resided in or transacted business in the State of Ohio. *See* Sankov Declaration. He has never been employed by or an employee of 24 Capital. *See* Declaration of Mark Allayev in Support of Opposition to Motion for Default Judgment.

### The Merchant Agreement

On February 21, 2019, 24 Capital and PBE entered into a contract entitled Merchant Agreement. *See* Complaint, Exhibit A (Merchant Agreement). *See also*, Complaint, ¶10. There are no allegations in the Complaint that the contract was entered into in the Southern District of Ohio. Each and every claim alleged in the Complaint is based on the Merchant Agreement. *See* Complaint, ¶10 ("This action arises from Defendants' breach of the terms of an agreement to advance funds against receivables dated 2/21/2019…."). Pursuant to Section 4.5 of the Merchant Agreement, the Merchant Agreement is to be governed by and construed in accordance with the laws of the State of New York and all actions related to the Merchant Agreement are to be instituted in a court sitting in New York.

Under the Merchant Agreement, 24 Capital purchased $264,258.37 ("Purchased Amount") in Receipts from PBE in exchange for payment of $184,796.06, less fees specified in

Appendix A of the Merchant Agreement, ("Purchase Price") to PBE.[1] The term Receipts is defined in the Merchant Agreement as "all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of [PBE's] business." PBE was to deposit all of its Receipts into a bank account located at PNC Bank ("Account") and 24 Capital was to obtain the Receipts it purchased by debiting $2,568.95 from the Account each weekday until the Purchased Amount was obtained. *See* Complaint, Exhibit A, Pgs. 1 and 15. The $2,568.95 to be debited that was specified in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) was meant to equal 25% of Receipts.

To ensure that the amounts debited from the Account on any given month equaled 25% of Receipts, pursuan to the Merchant Agreement, each month PBE was ***required*** to deliver bank statements for the Designated Account so that 24 Capital could perform a reconciliation:

> The Merchant shall deliver to 24 CAPITAL, no later than the 18th date of each month the bank statement for the Account in respect of the immediately preceding month. Within three business dates of 24 CAPITAL's receipt of the Merchant's monthly bank statements, 24 CAPITAL shall reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited per month equals the Specified Percentage. If the Merchant fails to deliver the bank statement for the Account for any month, 24 CAPITAL, shall consider that the specific remittances were equal to the Specified Percentage of the settlement amount due from each Transaction for such month.

*See* Complaint, Exhibit A, Pg. 1.

### *Procedural Background and the Allegations in the Second Amended Complaint*

On June 19, 2020, shortly after losing a motion to vacate confession of judgment obtained against it by 24 Capital in the Supreme Court of the State of New York for the County of Putnam,

---

[1] It is worth noting that PBE does not assert it did not receive the Purchase Price from 24 Capital. On the contrary, it admits that it was advanced funds under the Merchant Agreement throughout the entire Complaint.

PBE initiated this action. Copies of the Confession of Judgment, Motion to Vacate and Decision and Order at attached hereto. Due to Plaintiff not properly serving Defendants, a default was entered against Defendants in this action on August 27, 2020.

On March 8, 2020, Plaintiff filed its First Amended Complaint, which mooted the default. Then, on March 26, 2020 filed the Second Amended Complaint, which is referred to as the "Complaint" herein.

The primary basis for all eight claims in the Complaint is that 24 Capital purportedly misrepresented to PBE that it would "only recover payment from receivables" and instead debited a specific amount from PBE's bank account on a daily basis. *See* Complaint, ¶¶1, 10. PBE further alleges that debiting a specific amount from PBE's bank account on a daily basis was "unauthorized and illegal." *See* Complaint, ¶10. However, under the Merchant Agreement PBE expressly authorized 24 Capital to debit $2,568.95 from its bank account each weekday. *See* Complaint, Exhibit A (Merchant Agreement), Pg. 15 ("Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits)").

PBE also alleges that 24 Capital promised it additional funding, reneged on the promise of additional funding,[2] and then fraudulently, unlawfully, and illegally confessed judgment against it in New York. *See* Complaint, ¶¶1,10. However, PBE voluntarily executed an Affidavit of Confession of Judgment on February 21, 2019 and gave it to 24 Capital. *See* Affidavit of Confession of Judgment attached hereto. CPLR 3218 allows a party to sign an affidavit confessing that he or she owes the other party an amount certain, and authorizing the beneficiary party to file the affidavit with a New York state county clerk in order to obtain a judgment against the

---

[2] PBE conveniently leaves out that it obtained funding more than once from 24 Capital. 24 Capital provided it funding on January 10, 2019 and then again on February 21, 2019. *See* Complaint, Exhibit A.

authorizing party in that amount.  There is nothing unlawful or illegal about a confession of judgment.

Plaintiff now seeks to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3) and (b)(6).

## ARGUMENT

### I.  This Case Must be Dismissed Under Fed. R. Civ. P. 12(b)(2) Because this Court Lacks Personal Jurisdiction Over Defendants

Fed. R. Civ. P. 12(b)(2) allows dismissal for a lack of personal jurisdiction. When personal jurisdiction is challenged in a motion filed under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  When the motion is supported by properly documented factual assertions, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Id*.  The Court may opt to decide the motion based only on the affidavits or declarations, allow discovery of jurisdictional facts, or, if factual disputes need resolving, hold an evidentiary hearing.  *Id*.

"Although RICO authorizes nationwide service of process regardless of the defendants' contacts with the forum state, it only allows for such nationwide service when it is shown that the ends of justice require it." *Heinrichs v. Dunn,* 2014 WL 3572404, at *8 (S.D. Ohio July 21, 2014); *see also,  Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 23 F.Supp.2d 796, 802 (N.D.Ohio 1998).  Plaintiff has failed to demonstrate that justice requires nationwide jurisdiction here.  The Complaint only includes the bald assertion that "[i]t is in the interests of justice that the individual Defendant be made party to an action in this district." *See* Complaint, ¶4.

Moreover, while the Sixth Circuit has yet to address whether RICO permits nationwide service of process, *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.,* 617 F.Supp.2d 700, 706 (S.D. Ohio 2009), most jurisdictions limit nationwide service to cases in which the court has personal jurisdiction over at least one of the defendants, relying on the traditional minimum contacts analysis. *See Kattula v. Jade,* No. 5:07–CV–52, 2007 WL 1695669, at * 3 (W.D.Ky. June 8, 2007); *800537 Ontario Inc. v. Auto Enterprises, Inc. .,* 113 F.Supp.2d 1116, 1127 (E.D.Mich.2000); *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65 (2d Cir.1998); *Cal dwell v. Palmetto State Sav. Bank of S.C.,* 811 F.2d 916 (5th Cir.1987); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.,* 788 F.2d 535, 539 (9th Cir.1986). The Sixth Circuit has interpreted "minimum contacts" to require: (1) that the defendant purposefully avail himself of the privilege of acting in the forum state; (2) that the cause of action arise from the defendant's activities in the forum state; and (3) that the activities of the defendant must be substantial enough in the forum state to make the exercise of jurisdiction reasonable. *McClennan v. Csank & Csank Co., LPA*, 70 F.3d 1272 (6th Cir. 1995).

Minimum contacts cannot be established here. Neither 24 Capital or Sankov purposefully availed themselves to the State of Ohio. "Purposeful availment is the constitutional touchstone of personal jurisdiction and it exists where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state and were the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016).

24 Capital does not market or advertise its funding products in the State of Ohio and does not transact business in the State of Ohio. The Merchant Agreement was not entered into in the

State of Ohio, 24 Capital is not located in Ohio, and the Merchant Agreement provides for jurisdiction and venue in New York. There is simply no reason why 24 Capital would anticipate being hailed into court in Ohio.

Sankov does not reside in Ohio, has never transacted business in Ohio and has no contacts with Ohio whatsoever. There is likewise simply no reason why Sankov would anticipate being hailed into court in Ohio.

But even if the Court were to assume that PBE could somehow establish purposeful availment, it is clear that this case did not arise from any activity of 24 Capital or Sankov in the State of Ohio – neither have any activity in Ohio. PBE is located in Indiana, 24 Capital is located in Florida and New York and Sankov is located in New York. 24 Capital contracted with a business located in Indiana, not the State of Ohio. It is clear that the Merchant Agreement was executed by PBE in Indiana because the Affidavit of Confession of Judgment, which was signed at the same time as the Merchant Agreement was notarized in Indiana.

The "arising from" element is not satisfied unless "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). PBE has not and cannot demonstrate that "the cause of action is 'related to' or 'connected with' the Defendants' forum contacts" because none of the actions it complains of occurred in Ohio. PBE does not allege anywhere in the Complaint precisely what purportedly occurred in the State of Ohio. The Merchant Agreement was not entered into in the State of Ohio and the purported misrepresentations were not made in Ohio – Sankov has declared he has no contacts with Ohio and 24 Capital has no activity in the State of Ohio. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).

As there is no personal jurisdiction over any one defendant in this case, nationwide service fails.  PBE has failed to meet its burden and did not make the requisite *prima facie* showing that this Court's personal jurisdiction over Defendants is proper and therefore, dismissal is proper under Fed. R. Civ. P. 12(b)(2).

**II.      The Case Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) Because it was Brought in the Wrong Venue**

Under Fed. R. Civ. P. 12(b)(3), a case may be dismissed for improper venue.  Dismissal is proper under Fed. R. Civ. P. 12(b)(3) when a case is filed in a venue not prescribed by 28 U.S.C. § 1391. *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 536 (6th Cir.2002).  Pursuant to 28 U.S.C. §1391, venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Dismissal is appropriate here because this is not a judicial district in which 24 Capital or Sankov resides.  With respect to Sankov, residency for the purposes of venue is "the judicial district in which that person is domiciled."  28 U.S.C. §1391(c)(1).  Sankov is domiciled in Florida, not Ohio.

With respect to 24 Capital, residency for the purposes of venue is "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. §1391(c)(2).  As already demonstrated in the previous section, the Court

10

does not have personal jurisdiction over 24 Capital thus, this is not the proper venue for this action

pursuant to 28 U.S.C. §1391.

Dismissal is also appropriate because the events giving rise to the claims did not occur in

this judicial district, and, as demonstrated in the prior section, the Court does not have personal

jurisdiction over 24 Capital or Sankov.  Therefore, dismissal under Fed. R. Civ. P. 12(b)(3) is

appropriate.[3]

### III.  Dismissal of all Claims Under Fed. R. Civ. P. 12(b)(6) is Proper Because Plaintiff has Failed to State any Plausible Claims for Relief

#### A.  Applicable Legal Standard

Fed. R. Civ. P. 12(b)(6) permits a party to seek dismissal of a complaint for failure to state

a claim upon which relief may be granted.  To survive a motion to dismiss brought pursuant to

Fed. R. Civ. P. 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1940-41, 173 L. Ed. 2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127

S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  A claim has facial plausibility when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  *Id*.

"Two working principles underlie Twombly.  First, the tenant that a court must accept a

complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements,

supported by mere conclusory statements."  *Id*.  "Second, determining whether a complaint states

---

[3] It is also worth noting again that all of the claims arise out of the Merchant Agreement.  The Merchant Agreement designates courts sitting in the State of New York as the proper venue for such claims.

a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id*. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere legal conclusions, are not entitled to the assumption of truth." *Id*. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

### B. Count I of the Complaint Must be Dismissed Because Plaintiff Has Not Properly Plead a RICO Claim

A violation of 18 U.S.C. §1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). A plaintiff must allege every element to properly state a RICO claim. *Id*.

Plaintiff assets that the predicate act of racketeering activity is mail and wire fraud. Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Id*. The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud. *Id*. A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id*. A plaintiff must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information. *Id*.

When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* A RICO plaintiff is not required to plead or prove first-party reliance on an allegedly false statement. *Id.* To allege a valid RICO claim, however, a plaintiff must show not only that the predicate act was a "but for" cause of plaintiff's injuries, but also that it was a proximate cause. *Id.* A plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.*

Among the numerous issues with the RICO claim, Plaintiff fails to specify the statements that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made or explain why the statements were fraudulent in the Complaint.

Plaintiff also does not allege facts that mail or wire fraud was the "but for" and proximate cause of its injuries. There are no allegations establishing that there was a direct relationship between the purported injury sustained and the injurious conduct alleged. And Plaintiff does not even allege injurious conduct. It merely states that it has sustained "financial injury" without more.

Further, Plaintiff does not tie mail or wire fraud to the "financial injury" it purportedly sustained. The only allegation with respect to mail or wire fraud is that "enterprise receives money through the mails and wires." The allegations in the Complaint are simply not enough to plausibly plead a RICO claim against Defendants and should be dismissed.

**C.      Count II of the Complaint Must by Dismissed Because Plaintiff Has Not Plead a Plausible Claim for Intentional Misrepresentation**

Count II of the Complaint is an intentional misrepresentation claim under Ohio law. "To succeed on an intentional misrepresentation claim, a party must show (1) a representation was

made; (2) was material to the transaction at hand; (3) was knowingly false or was made with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another party into relying on it; (5) justifiable reliance on the representation; and (6) a resulting injury proximately caused by the reliance." *Cuspide Properties, Ltd. v. Earl Mech. Servs.*, 53 N.E.3d 818, 832 (Ohio 2015).

Plaintiff alleges that "Defendants intentionally misrepresented their MCA arrangement to PBE." *See* Complaint, ¶40. Plaintiff does not identify any specific representation directly in Count II however, it alleges earlier in the Complaint that Defendants misrepresented that "repayment would be against receivables." *See* Complaint, ¶10.

Even if the Court were to assume the Defendants intentionally misrepresented the arrangement as alleged in the Complaint (they didn't), is unclear how reliance on any alleged misrepresentation of the arrangement could possibly be justified when there is a contract that contains a merger clause which speaks to exactly what the arrangement was between the parties.

What's more, the entire factual basis for the claim is nonsensical. Plaintiff complains about debits being made from its bank account daily, rather than repayment being against receivables as was purportedly represented to it, but the Agreement which again contains a merger clause, expressly provides "Merchant hereby authorizes 24 CAPITAL to ACH debit the specified remittances from the Merchant's Account on a daily basis..."

The fact that there would be a daily debit and the amount of the daily debit is also clearly set forth in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) attached to the Agreement. Thus, the intentional misrepresentation claim is simply not plausible on its face even when assuming all allegations in the Complaint are true because,

assuming the representation was actually made, Plaintiff could not have justifiably relied upon it because the contract that governs the relationship actually provides for daily debits.

It is also worth noting that a fraud claim cannot be predicated upon promises or representations relating to future actions or conduct. *See, e.g., Interstate Gas Supply, Inc. v. Calex Corp.*, 2006-Ohio-638, ¶ 85. The purported misrepresentation that Plaintiff complains of was allegedly made before the contract was entered into and consisted of a future promise – "repayment would be against receivables." Thus, the purported misrepresentation relied upon in the Complaint simply cannot be the basis for the claim as a matter of law.

### D. Count III of the Complaint Must be Dismissed Because Plaintiff Has Not Plead a Plausible Claim for Fraud

For its fraud claim, Plaintiff alleges that the documents attached to Exhibit B of the Complaint are fraudulent because they state that Plaintiff resides in New York and conducts business in New York. It is clear from the face of the documents that they were not signed by or sent by the Defendants. The letter is from David Fogel, P.C. and signed by David Fogel. Therefore, Defendants cannot be responsible for representations contained in those documents because they did not make them.

### E. Count IV of the Complaint Must be Dismissed Because Disgorgement is Not a Cause of Action

There is no cause of action for disgorgement under Ohio law. Disgorgement is an equitable remedy, not a cause of action. *See, e.g. Nick Mayer Lincoln Mercury v. Ohio Bur. of Workers' Comp.*, 2010-Ohio-2782, ¶5 (discussion of trial court's dismissal of disgorgement claim for failure to state a claim upon which relief can be granted because disgorgement is not a claim for relief).

Therefore, Plaintiff cannot obtain a judgment on its claim for disgorgement and the claim must be dismissed.

### F. Count V of the Complaint Must be Dismissed Because Plaintiff has Failed to State a Plausible Claim for Misappropriation of Name and Goodwill

For its misappropriation of name and goodwill claim only states as follows:

> Through its unauthorized contact with Partners First Credit Union and PNC under the guise of a legitimate creditor. Defendant misappropriated Plaintiff's public name, persona, and goodwill to raise the unauthorized funds. Plaintiff is entitled to recovery of all funds raised by Defendant in Plaintiff's name.

Complaint, ¶

Ohio has adopted the tort of misappropriation of name or likeness of another as propounded by the Restatement. *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224 (1976). Per the Restatement, misappropriation of name and likeness is when someone else uses your name or likeness for his benefit, such as for an advertisement or commercial. Restatement (Second) of Torts, §652 C (1977).

"The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." *Zacchini*, 47 Ohio St.2d 224.

Based on the relevant case law and the explanation of the claim in the Restatement set forth above, it is unclear how the claim of misappropriation of name could possibility be applicable in this case. The single paragraph in the Complaint certainly does not allege facts to support the claim and they must be dismissed.

**G.      Count VI of the Complaint Must be Dismissed Because Plaintiff Has Failed to State a Plausible Claim for Breach of Contract**

"In order to recover on a claim for breach of contract, the plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff." *Ballard v. Nationwide*, 2013-Ohio-2316. There are no allegations in the Complaint of what the purported breach of the contract was. The Plaintiff broadly states on more than one occasion in Complaint that there was a breach, but provides no explanation of what the purported breach was anywhere in the Complaint and the factual allegations in Paragraphs 54-58 which come under the breach of contract heading in the Complaint do not set out a breach of contract claim.

The only allegation that is even remotely close to a claim of breach is that repayment was supposed to be against receivables, but instead a daily amount was debited from the bank account. As pointed out in a previous section of this brief, the contract provides for daily debits. Therefore, debiting the bank account daily cannot form the basis for a breach of contract claim because such action is expressly authorized by the contract.

17

**H.** **Count VII of the Complaint Must be Dismissed Because 24 Capital Does Not Transact Business in Ohio and, in any Event There is no Private Right of Action for a Violation of O.R.C. 1703.03**

O.R.C. 1703.03 requires foreign corporations to obtain a license to transact business in the State of Ohio. 24 Capital does not transact business in the State of Ohio. *See* Allayev Declaration, ¶6. Therefore, it is not required to obtain a license under O.R.C. 1703.03.

Additionally, there is no private right of action for a violation of O.R.C. 1703.03. O.R.C. 1703.28 provides that a "forfeiture shall be recovered in an action in the name of the state brought in the court of common pleads of Franklin county, or in any county in which the corporation has transacted business or has property or a place of business, by the attorney general or by the prosecuting attorney." Thus, pursuant to the plain language of the statute, only the State of Ohio via the attorney general or prosecuting attorney can assert a violation of O.R.C. 1703.03 and seek forfeiture under O.R.C. 1703.28. The claim must be dismissed.

**I.** **The Class Allegations in Count VIII of the Complaint Must be Dismissed Because the Proposed Class Cannot be Certified as a Matter of Law**

Count VIII of the Complaint consists of class allegations. Dismissal of class allegations in appropriate using the standards of Fed. R. Civ. P. 12(b)(6). *See, e.g. Walls v. Wells Fargo Bank, N.A. (In re Walls)*, 262 B.R. 519, 524 (E.D. Ca. 2001). If the proposed class cannot be certified as a matter of law then dismissal is appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff defines the class as "All borrowers who received merchant cash advances and were advised the repayment would be against receivables only." One of the primary issues with the proposed class is that it is based upon breach of contract. In breach of contract cases, individualized inquiries are necessary to determine whether a breach of a contract has occurred even where the agreement at issue is a standard agreement. For example, if plaintiffs allege that

the defendant breached an agreement in a number of different ways, individualized issues can predominate over common questions.

The Eleventh Circuit in *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), found that individualized issues of fact predominated over common issues of breach of contract claim alleged by a putative class of doctors against HMOs, stating that "each doctor, for each alleged breach of contract (that is, each underpayment), must prove the services he provided, the request for reimbursement he submitted, the amount to which he was entitled, the amount he actually received, and the insufficiency of the HMO's reasons for denying full payment."  Klay, 382 F.3d at 1264.

The class allegations also warrant dismissal because the class definition requires determination of liability.  Where a class is defined in such a manner that the court must determine the ultimate issue of liability in the case, it cannot be certified because the court is unable to determine who is included in the class before a trial on the merits. 8 Newberg on Class Actions, § 24.17 (4th ed. 2008).  Courts thus find these types of classes to be unascertainable and "self-defeating" since the burden of conducting mini-trials on the merits of each putative class member's case negates the efficiency of the class action vehicle. *See, e.g. Forman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa 1995) (plaintiff's proposed class definition was untenable where a determination of class membership "would essentially require a mini-hearing on the merits of each case").  The most obvious example of this is where the class is defined as consisting of all persons who may have been injured or harmed by the wrongful conduct alleged in the complaint.  *See, e.g. Conigliaro v. Norwegian Cruise Line*, 2006 WL 7346844 (S.D. Fla. Sept. 1, 2016) (class of cruise passengers "who suffered either physical injury, and/or emotional injury, and/or had their cruise ruined" was impermissibly vague and "unavoidably" implicated the merits of the case).  In this

case, to determine who would be included in the class, the court would have to determine what, if any, harm was suffered by each putative class member. This is inappropriate and warrants dismissal of the class claims.

## CONCLUSION

This action must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(2), (3) and/or (6) because this Court does not have personal jurisdiction over the Defendants, venue is improper, and PBE has failed to state any plausible claim for relief.

Respectfully submitted,

KAMINSKI LAW PLLC

*/s/Shanna M. Kaminski*
Shanna M. Kaminski (*pro hac vice*)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Telephone: (248) 462-7111
E-mail: skaminski@kaminskilawpllc.com

EASTMAN & SMITH LTD.

*/s/Jared J. Lefevre*
Jared J. Lefevre (0085931)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Telephone: (419) 241-6000
Telecopier: (419) 247-1777
E-mail: jjlefevre@eastmansmith.com

Attorneys for Defendants
24 Capital, LLC and Jason Sankov

**PROOF OF SERVICE**

This is to certify that a copy of the foregoing has been filed electronically this 7th day of May 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/Shanna M. Kaminski_
An Attorney for Defendants
24 Capital, LLC and Jason Sankov