IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PETERS BROADCAST ENGINEERING,**

      **Plaintiff,**

    v.                                                    Civil Action 2:20-cv-3135
                                                          Magistrate Judge Kimberly A. Jolson

**24 CAPITAL FUNDING, LLC,**
**et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c) (Doc. 28), is before the Court on Defendants 24 Capital, LLC and Jason Sankov's Motion to Dismiss (Doc. 31) and Plaintiff Peters Broadcast Engineering's Amended Motion to Certify Class (Doc. 30).  For the following reasons, Defendants' Motion is **GRANTED**, Plaintiff's Motion is **DENIED** as moot, and this action is **DISMISSED**.

**I.     BACKGROUND**

This action arises between Plaintiff Peters Broadcast Engineering ("Peters Broadcast") and Defendants 24 Capital, LLC ("24 Capital") and Jason Sankov.  All parties agree that Peters Broadcast is an Indiana corporation.  (Doc. 31 at 3; Doc. 35 at 4).  Defendants assert that Peters Broadcast's principal place of business is in Fort Wayne, Indiana (Doc. 31 at 3), which Peters Broadcast does not dispute (*see* Doc. 35).  Defendants further represent that 24 Capital is a New York limited liability company with its principal place of business in Long Island City, New York, and that Mr. Sankov is an individual residing in Sunny Isles Beach, Florida (Doc. 31 at 3–4), none of which Peters Broadcast disputes (*see* Doc. 35).

At issue is a contract formed between Peters Broadcast and 24 Capital, LLC on February 21, 2019. (Doc. 25-1 at 1–17). Under the agreement, 24 Capital provided an advance to Peters Broadcast in exchange for assuming interest in Peters Broadcast's future receivables. (*Id.*) Specifically, 24 Capital purchased $264,258.37 in receivables in exchange for a $184,796.06 advance, minus costs and fees. (*Id.* at 1, 11).

A particular provision of the contract stated that Peters Broadcast must deposit all receivables into a single bank account, from which 24 Capital would take a debit of $2,568.95 each weekday, until it received the full purchase amount. (*Id.* at 1, 15). The collection of this weekday debit amount was meant to approximate collection of 25% of the total monthly deposits. (*Id.*). The agreement further specified that Peters Broadcast should provide monthly bank statements to 24 Capital, and 24 Capital would accordingly credit or debit the account if it had taken funds over or under the 25% mark. (*Id.* at 1).

A few months later, 24 Capital, believing that Peters Broadcast had breached the agreement, moved for judgment by confession in the Supreme Court of New York for Putnam County, which was granted. (Doc. 31-4). The judgment was supported by an affidavit of confession of judgment attested to by Robert Michael Peters, on behalf of Peters Broadcast. (Doc. 31-3). The affidavit was prepared concurrently with the contract, on February 21, 2019, and authorized judgment in the state of New York if the agreement was breached. (*Id.*). Peters Broadcast moved to vacate the judgment of the New York court (Doc. 31-5), but its motion was denied in April 2020 (Doc. 31-6). Shortly thereafter, Peters Broadcast initiated the instant action, with a Complaint filed on June 19, 2020. (Doc. 1). The Complaint has twice since been amended. (Docs. 16, 25).

Peters Broadcast alleges that 24 Capital misrepresented the terms of the agreement, promising that it would only exact payment in proportion to incoming receivables, while instead taking the weekday debits without regard to receivables. (Doc. 25 at 1–2). It further alleges that once these debits had reduced the cash flow of the company, 24 Capital promised additional funding, which it never provided, instead obtaining the confessed judgment in court. (*Id*.). This, Peters Broadcast says, is not an isolated event, but rather part of a scheme in which 24 Capital regularly enters into these agreements with "unwitting borrowers" before draining their funds, making illusory promises to lend additional funds, and ultimately obtaining confessed judgments in court. (*Id*.).

Particularly, Peters Broadcast characterizes this alleged scheme as racketeering activity, subject to civil remedy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. (*Id.* at 8–12). This RICO claim is the keystone of Peters Broadcast's case, through which it claims personal jurisdiction over Defendants. (*Id*. at 3; Doc. 35 at 9–14). For the six state-law claims it brings, including intentional misrepresentation, fraud, and breach of contract, the only asserted basis for personal jurisdiction is pendent jurisdiction emanating from the RICO claim. (*Id*. at 17). Finally, it alleges that all the foregoing claims are subject to class action, for a class of "borrowers who received merchant cash advances and were advised the repayment would be against receivables only." (Doc. 25 at 15–16).

On May 3, 2021, Peters Broadcast filed an Amended Motion to Certify Class. (Doc. 30). On May 7, 2021, Defendants filed a Motion to Dismiss. (Doc. 31). Each received a response in opposition (Docs. 32, 35), which were followed by replies (Docs. 40, 42). The Motions are now fully briefed and ripe for consideration. Defendants raise defenses under Federal Rule of Civil Procedure 12(b)(2), (b)(3), and (b)(6) in their Motion to Dismiss. (Doc. 31 at 1). Because the

3

Court holds that Defendants should prevail on their defense of lack of personal jurisdiction under 12(b)(2), and because jurisdiction is a threshold issue, it limits its discussion to the same.

**II.     STANDARD**

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to submit the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). A trial court exercises discretion in how it resolves a Rule 12(b)(2) motion and may decide the motion on the basis of written submissions, permit discovery on the motion, or conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). When the motion is decided on written submissions, these include not only pleadings, but also supporting affidavits. *Id*.

"Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). First, a plaintiff must make a prima facie case for personal jurisdiction, through its complaint. *Id*. Then the burden shifts to the defendant to support its motion to dismiss with evidence. *Id*. If that burden is met, then it is once again incumbent on the plaintiff to demonstrate, this time not merely on its pleadings, but with specific facts, the basis for the court's jurisdiction. *Id*.

**III.    DISCUSSION**

To begin, the Court must consider whether Peters Broadcast sets out a prima facie case for personal jurisdiction in its Second Amended Complaint (Doc. 25). Peters Broadcast's only asserted basis for personal jurisdiction over Defendants is through RICO's venue and process provisions, 18 U.S.C. § 1965. (*Id*. at 3). Those provisions provide:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

>(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
>
>(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas [sic] issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena [sic] shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.
>
>(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965.

Which of these subsections permit service of summons on defendants, however, is a matter of debate among the Circuits. The choice is central to resolving whether the Court has personal jurisdiction because Rule 4(k)(1)(C) of the Federal Rules of Civil Procedure provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by federal statute." Of course, the exercise of jurisdiction also must comport with Due Process, and whether the statute requires any defendant to be connected to the forum state affects the scope of the "minimum contacts" test. Notably, the Sixth Circuit has not made its position known, so there is no controlling authority for the Court to follow here.

The minority approach, adopted in the Fourth and Eleventh Circuits, holds that §1965(d) governs service over out-of-district defendants. *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116–17 (3d Cir. 2020) (citing *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)). Because that subsection broadly permits process "on any person in any judicial district in which

5

such person resides, is found, has an agent, or transacts his affairs[,]" the accompanying Due Process consideration in these courts centers on "a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state . . . ." 18 U.S.C. §1965(d); *Republic of Panama*, 119 F.3d at 947. This is the "national contacts" approach.

The majority approach, adopted in the Second, Third, Seventh, Ninth, Tenth, and D.C. Circuits, holds that § 1965(b) governs service over out-of-district defendants. *Laurel Gardens*, 948 F.3d at 117 (citing *FC Inv. Grp. v. IFX Markets, Ltd.*, 529 F.3d 1087, 1098–1100 (D.C. Cir. 2008); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229–33 (10th Cir. 2006); *PT United Can Co. v. Crown Cork & Steel Co.*, 138 F.3d 65, 70–72 (2d Cir. 1998); *Lisak v. Mercantile Bancorp Inc.*, 834 F.2d 668, 671–72 (7th Cir. 1987); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538–39 (9th Cir. 1986)). Because the preceding subsection, § 1965(a), "grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs[,]" these courts hold that the Due Process inquiry centers on whether at least one defendant has minimum contacts with the forum state. *Id*. at 117–18. If so, then § 1965(b) allows service on "other parties" not residing in the district, "who may be additional defendants of any kind[.]" *Id*. at 118. This is the "forum state contacts" approach.

Peters Broadcast urges the Court to follow the minority approach and suggests it is the path the Sixth Circuit is more likely to take. (Doc. 35 at 9–14). In support, it cites the Sixth Circuit's consideration of nationwide service of process for cases arising under the Employee Retirement Income Security Act ("ERISA"). (Doc. 35 at 12) (citing *NGS Am., Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000)). Yet, in Plaintiff's relied-upon case, the Sixth Circuit did not reach the ultimate issue of whether ERISA's nationwide service of process provision would give the court personal

6

jurisdiction over a defendant with minimum national contacts. Instead, it concluded that the action was "not brought under ERISA[,]" and the "nationwide service of process provision [was] thus not implicated[.]" *NGS Am.*, 218 F.3d. at 524 n.5, 530.  It did, however, indicate that the "weight of Sixth Circuit precedent supports acceptance of the national contacts approach" and that it "likely would have to find personal jurisdiction in [the] case" if ERISA applied.  *Id.* at 524 n.5.  That precedent includes two cases in which the Sixth Circuit adopted the national contacts approach when faced with a nationwide service of process provision.  *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981) (provision in the federal receivership statute, 28 U.S.C. §§ 754 and 1692); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (provision in the Securities Exchange Act of 1934).

Significantly, the Sixth Circuit indicated that if it had reached the issue, it would have to make a particularized determination about ERISA despite the weight of the precedent, given that the "interests might balance differently in the ERISA context than in contexts like bankruptcy and interpleader where the need for all parties to appear in one forum might justify personal jurisdiction via nationwide service of process provisions." *NGS Am.*, 218 F.3d. at 524 n.5.  A year later, the Sixth Circuit did take up the question in the ERISA context and adopted the national contacts approach.  *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir. 2001).

Although the Sixth Circuit has adopted the national contacts approach with respect to the nationwide service of process provisions in these other statutes, the Court finds it appropriate, in accordance with the Circuit's suggested process in *NGS American, Inc.*, to make a particularized consideration of the interests and language of the RICO statute before reflexively adopting the national contacts approach.  This tracks with the way in which other courts have interpreted nationwide service of process provisions across different statutes.  For instance, though the Ninth

7

Circuit has held, like the Sixth Circuit, that national contacts are sufficient for personal jurisdiction under the Exchange Act, it also has held that forum state contacts are necessary under the RICO statute. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1315–16 (9th Cir. 1985) (Exchange Act); *Butcher's Union*, 788 F.2d at 538–39 (RICO). The same is true in the Second and Third Circuits. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) (Exchange Act); *PT United*, 138 F.3d at 71–72 (RICO); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (Exchange Act); *Laurel Gardens*, 948 F.3d at 120 (RICO).

So, to the extent that Plaintiff argues the Sixth Circuit's adoption of the national contacts approach with respect to the Exchange Act, the federal receivership statute, or ERISA are necessarily controlling in the context of RICO, the Court disagrees. Those statutes have structures, language, and aims that are distinct from the RICO statute, which must be assessed here on its own terms.

Viewing the RICO venue and service provisions closely, the Court finds the majority approach, recently outlined and adopted by the Third Circuit in *Laurel Gardens*, 848 F.3d 105, to be the best reading of the statute. This reading of § 1965 considers all its subsections in relation to one another. First, § 1965(a) provides that a civil RICO proceeding may be brought *against* any person (that is, against a defendant) in any district in which that person (the defendant) resides, has an agent, or transacts his or her affairs. *Id.* at 117. Second, § 1965(b) allows "other parties" not residing in the district (that is, additional defendants from outside the district) to be brought before the court when "the ends of justice require." *Id.* at 118. Third, § 1965(c) refers to the service of subpoenas on witnesses. *Id*. And finally, § 1965(d) describes "all other process" which, "must mean process different than a summons or a government subpoena, both of which are dealt with in previous subsections." *Id*. (quoting *Cory*, 468 F.3d at 1230).

8

In other words, the Court views the minority approach, which reads § 1965(d) as the relevant provision for service of summons on out-of-district defendants, as a reading that can be supported only if the subsections are read in isolation, rather than as part of a coherent whole. As noted, § 1965(b) allows for the joinder of "other parties." That is, parties other than those described in the preceding subsection § 1965(a), which allows a civil RICO action "against any person" to be "instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." So, the relevant inquiry, as most Circuits have agreed, is whether there is at least one defendant with traditional forum state contacts, the person described by § 1965(a). If so, any number of defendants from other districts then may be joined to the action under § 1965(b).

Applied here, Peters Broadcast must assert that at least one of the Defendants in this case had minimum contacts with Ohio in order to set out a proper prima facie case for personal jurisdiction under RICO. The Sixth Circuit has distilled the requirements of minimum contacts to: (1) the defendant purposefully availing itself "of the privilege of acting in the forum state or causing a consequence in the forum state[;]" (2) the cause of action "aris[ing] from the defendant's activities there[;]" and (3) whether "the acts of the defendant or consequences caused by the defendant [ ] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889–90 (6th Cir. 2002) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Admittedly, Peters Broadcast does make assertions of minimum contacts between Defendants and Ohio. But the language is boilerplate, not rising to the prima facie burden of "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum

9

state to support jurisdiction." *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).  Peters Broadcast pleads "[t]he conduct injuring [it] and continuing to injure it occurred in the Southern District of Ohio.  Defendant 24 Capital is not licensed to do business in the State of Ohio, however it has transacted and continues to transact business in Ohio.  The acts complained of took place in the Southern District of Ohio." (Doc. 25 at ¶ 4).  It further purports that the alleged racketeering enterprise "has a history of involvement within Ohio, Indiana, Florida, Washington, D.C., and throughout the United States." (*Id.* at ¶ 32).

These vague assertions of jurisdiction do not satisfy the "reasonable particularity" required in order to establish a prima facie case.  And, even if they did, Defendants have expressly refuted the assertions:

> 24 Capital does not market or advertise its funding products in the State of Ohio and does not transact business in the State of Ohio.  The Merchant Agreement was not entered into in the State of Ohio, 24 Capital is not located in Ohio, and the Merchant Agreement provides for jurisdiction and venue in New York. . . .
>
> Sankov does not reside in Ohio, has never transacted business in Ohio and has no contacts with Ohio whatsoever. . . .
>
> . . . [Peters Broadcast] is located in Indiana, 24 Capital is located in Florida and New York . . . .  24 Capital contracted with a business located in Indiana, not the State of Ohio.  It is clear that the Merchant Agreement was executed by [Peters Broadcast] in Indiana because the <u>Affidavit of Confession of Judgment</u>, which was signed at the same time as the Merchant Agreement was notarized in Indiana.

(Doc. 31 at 9).  In addition, Defendants have submitted evidence to support their position.  Indeed, the Affidavit of Confession of Judgment appears to have been signed by Robert Peters, on behalf of Peters Broadcast, on the same day as the at-issue contract and was notarized in Indiana.  (Doc. 31-3).  The confession of judgment was obtained in New York.  (Doc. 31-4).  And both Mr. Sankov and Mark Allayev, the CEO of 24 Capital, submitted declarations stating that neither of the Defendants reside, advertise, or transact business in Ohio.  (Docs. 31-1, 31-2).

10

Given this, the burden necessarily shifts back to Peters Broadcast to allege, with specific facts, the basis for the Court's jurisdiction. It fails to do so. Peters Broadcast makes no specific allegations of how this alleged racketeering activity concerned Ohio in its response in opposition to the Motion. (*See* Doc. 35). The only supporting exhibit Peters Broadcast included with that response was a certificate purporting to license Peters Broadcast, an Indiana corporation, to transact business in Ohio. (Doc. 35-1). But whether Plaintiff was permitted to transact business in Ohio has no bearing on whether Defendants transact business in Ohio.

At base, there has not been enough asserted by Peters Broadcast to establish that the Court has personal jurisdiction over either Defendant. Beginning with purposeful availment, there is no particular action or consequence that Peters Broadcast has connected between 24 Capital or Mr. Sankov to Ohio. Second, Peters Broadcast has not specifically alleged how this cause of action arises from either Defendant's conduct within Ohio. And finally, nothing about the Defendants' connection to Ohio seems substantial enough to make the exercise of jurisdiction by the Court reasonable.

As a secondary argument, Peters Broadcast asserts that 24 Capital's website should be a basis for personal jurisdiction over Defendants. (Doc. 35 at 14–17). The Court first notes that this argument is entirely absent from its pleading (*see* Doc. 25), and that Peters Broadcast should have separately moved to amend its pleading—or included this argument in one of the two prior revisions—if it believed the website forms a basis for jurisdiction. Rather, it makes this assertion only in its response to the motion to dismiss, requesting leave to amend. (Doc. 35 at 14–17). Still, taking the argument on its merits, the Court is unconvinced it forms a proper basis for jurisdiction.

Peters Broadcast cites Sixth Circuit caselaw which suggests "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a

11

degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). It therefore asks the Court to consider to what degree 24 Capital's website is interactive and intends interaction with residents of Ohio. (*See* Doc. 35 at 14–17). But that would settle only whether 24 Capital had purposefully availed itself of the forum, which is only one of three requirements for minimum contacts. Peters Broadcast would still need to assert that the action is "aris[ing] from" 24 Capital's conduct in Ohio, and that 24 Capital's actions, or the consequences it caused, have a "substantial enough connection with [Ohio] to make the exercise of jurisdiction . . . reasonable." *Id*. And, as the above discussion highlights, Peters Broadcast has not made any specific allegations as to Defendants' actions in Ohio.

Accordingly, the Court lacks personal jurisdiction over Defendants regarding the RICO claim. And as the alleged basis for all accompanying state-law claims is pendent jurisdiction, it necessarily lacks personal jurisdiction over Defendants for those claims as well. Thus, Defendants' Motion to Dismiss (Doc. 31) is **GRANTED**. Because Plaintiff's underlying claims are not properly before the Court, and must be dismissed, its Amended Motion to Certify Class is **DENIED** as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 31) is **GRANTED**, Plaintiff's Amended Motion to Certify Class (Doc. 30) is **DENIED** as moot, and this action is **DISMISSED**.

IT IS SO ORDERED.

Date: September 15, 2021         /s/ Kimberly A. Jolson
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE